U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUL 2 9 2015

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| RICHARD SCROGGINS (#101395) | DOCKET NO. 15-cv-1768; SEC. P |
| VERSUS | JUDGE DRELL |
| GLORIA A. STOKES, ET AL. | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Pro se Plaintiff Richard Scroggins filed the instant civil rights complaint in forma pauperis and pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Winn Correctional Center ("WNC") in Winnfield, Louisiana. He names twenty-two defendants and raises a variety of claims.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. §636 and the standing orders of the Court.

### *Factual Allegations*

In his original complaint, Plaintiff alleged that a former case manager at WNC, Gloria Angela Stokes, brought "some money and drugs" to WNC in an attempt to "frame" Plaintiff. He claims that Stokes caused Plaintiff to believe that the two of them were married. [Doc. #1, p.1] He states that Warden Powell, Warden Keith, Brenda Smiley, Cpt. Ward, Miss Booker, and Miss Rogers were all "part of a scam" to frame Plaintiff, as well. [Doc. #1, p.1] He alleged that Sgt. Howard smuggled drugs into WNC, as well. [Doc. #1, p.1-2] He states that his "god-sister," Ruby Small, also

brought drugs and money to some location. The remainder of his initial complaint is mostly unintelligible. He makes some allegations about a sergeant taking him out on the streets acting as Plaintiff's bodyguard. [Doc. #1, p.1]

In an amended complaint [Doc. #4], Plaintiff states that on July 8, 2014, Case Manager Stokes accused Plaintiff of physically assaulting her, and he was handcuffed and slammed onto the concrete by Captain Ward. He also states that Gloria Stokes "had me on having sex and she had all of my possessions in her control." [Doc. #4, p.5] He claims again that Stokes tried to frame him by bringing drugs into the facility and giving Plaintiff drugs to smoke. He also claims that Stokes tried to have Plaintiff killed because of an insurance policy held by Plaintiff's "god-sister" and that Stokes tried to get Plaintiff to sign a pre-nuptial contract. He claims that Stokes had an affair with another inmate, but he she brought Plaintiff a suitcase of money telling Plaintiff that he could win her back. [Doc. #4, p.5]

Finally, Plaintiff alleges that he wrote an administrative grievance on September 30, 2014, regarding disrupted legal mail. He claims that Captain Bobby stated that Plaintiff would be placed back on lock-down if he did not withdraw the grievance.

### Law and Analysis

1. **Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed *in*

*forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. §1915A. See <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998)(per curiam). Because he is proceeding in forma pauperis, his complaint is also subject to screening under §1915(e)(2). Both §1915(e)(2)(B) and §1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." <u>Id.</u> at 327. A claim is factually frivolous when the facts alleged are "clearly baseless", 490 U.S. at 327, a category encompassing allegations that are "fanciful,"[1] "fantastic,"[2] and "delusional[3]." See <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its

---

[1] <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).

[2] <u>Id.</u> at 328.

[3] <u>Id.</u>

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); *accord* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiff's allegations regarding his being tricked into believing he was married to Stokes, her attempt to have Plaintiff killed for a life insurance policy, Plaintiff being brought a suitcase of money in jail, and the scam to give drugs to Plaintiff to frame him are all allegations that are "fanciful," "fantastic,", or "delusional." See Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). Allegations may be fanciful, fantastic, and delusional where they rise to the level of the irrational or the wholly incredible." Id. Plaintiff's allegations sound fanciful, fantastic, or delusional. Even if they were plausible, however, Plaintiff has not alleged the violation of a constitutional right with regard to the mistaken belief that he was married, the prenuptial agreement or any other contract, or the suitcase of money he was presented.

**2.   Criminal Charges**

Next, Plaintiff asks that criminal charges be brought against various defendants. There is no constitutional right to have a person criminally prosecuted. See Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990). The prosecution of criminal actions in the federal courts is a matter solely within the discretion of the Attorney General of the United States, and duly authorized United States Attorneys. The prosecution of criminal actions in the

4

Louisiana courts is a matter solely within the discretion of the Louisiana Attorney General and the various District Attorneys. See La. C.Cr.P. arts. 61 and 62. Thus, to the extent that plaintiff demands that the defendants be prosecuted, his claim is frivolous.

3. **Excessive Force**

Plaintiff alleges that Defendant Stokes accused him of physically assaulting her, which led Captain Ward to handcuff Plaintiff and slam him onto the concrete. Plaintiff claims that this resulted in a cut to his ear. [Doc. #4, p.5] "[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In the context of an allegation of the use of excessive force by a prison official, "the core judicial inquiry is... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force [by a prison guard] was wanton and unnecessary," the court considers "the extent of [the] injury suffered," "the need for [the] application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (citing Whitley, 475 U.S. at 321) (internal quotation marks omitted).

5

The Supreme Court has recognized that the Eighth Amendment includes an "objective component." That is, in considering a prisoner's claim, the court must ask if the alleged wrongdoing was objectively *harmful enough* to establish a constitutional violation. Id. at 8 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Not every malevolent touch by a prison guard gives rise to a federal cause of action. Id. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. See id. at 9-10.[4]

In this case, "the extent of [the] injury suffered," was minimal. Plaintiff's only objective injury was a cut to his ear. He does not allege that his injury required any medical treatment. Moreover, he alleges that the force was applied after Stokes reported to Cpt. Ward that Plaintiff had physically assaulted her. Thus, the relationship between the amount of force used and the threat reasonably perceived by the responsible officials is not disproportionate.

3. **Retaliation**

Plaintiff also alleges that he wrote an administrative grievance on September 30, 2014, regarding disrupted legal mail.

---

[4] Moreover, under the Prison Litigation Reform Act, 28 U.S.C. §1997e(e), the prisoner must have suffered an injury that is more than *de minimis*, although it need not be significant. See Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997).

6

He claims that Captain Bobby stated that Plaintiff would be placed back on lock-down if he did not withdraw the grievance. First, Plaintiff does not allege that he was actually ever placed in lock-down as a result of failing to drop the grievance. Moreover, according to Plaintiff's exhibits, the grievance was *not accepted* because it was untimely. [Doc. #4, p.9] Thus, there was no need to drop the grievance, which had been rejected.

Prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. Morris v. Powell, 449 F.3d 682, 684 (5th Cir.2006); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. Woods, 60 F.3d at 1166. To prevail on a claim of retaliation, a prisoner must establish four elements (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Morris, 449 F.3d at 684; Hart v. Hairston, 343 F. 3d 762, 764 (5th Cir.2003); Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999). In this case, Plaintiff has not alleged a retaliatory adverse act. Moreover, because the grievance was not even accepted for consideration, Plaintiff could not show that any retaliation was caused by his

7

failure to drop the ARP.

### *Conclusion*

Plaintiff has filed a complaint and several amended complaints. The Court is convinced that Plaintiff has presented the best case that could be presented by him under these circumstances, and that further amendment of the pleadings would serve no useful purpose. For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. §1915(e)(2)(B) and 1915A.

### *Objections*

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM**

**ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.**

THUS DONE AND SIGNED at Alexandria, Louisiana, this 29th day of July, 2015.

                                                          _____
                                                          JAMES D. KIRK
                                                          UNITED STATES MAGISTRATE JUDGE